LAW OFFICE OF RON BOCHNER
Ron K. Bochner - 160093
3333 Bowers Avenue, Suite 130
Santa Clara, California 95054
(408) 200-9890
FAX: (510) 740-3699
robolaw@justice.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

NORTHERN DIVISION OF CALIFORNIA

| | |
|---|---|
| RICHARD HOWARD,<br><br>         Plaintiff,<br><br>vs.<br><br>WELLS FARGO FINANCIAL MISSOURI, INC., WELLS FARGO FINANCIAL ACCEPTANCE, WELLS FARGO AUTO FINANCE, INC., WELLS FARGO FINANCIAL CAR, LLC, and DOES 1-50,<br><br>         Defendants.<br>_____/ | Case No.   C07-05881 EDL<br><br>POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND FOR SANCTIONS<br><br>DATE:     July 15, 2008<br>TIME:     9:00 a.m.<br>DEPT.:    E |

**BACKGROUND**

This is a motion to compel further response and production of documents to plaintiff's Request for Admission, Set One and Request for Documents, Set One.

This is a case for violation of the Fair Credit Reporting Act/Fair and Accurate Transactions Act (FCRA).  Plaintiff RICHARD HOWARD (Plaintiff) alleges that defendants WELLS FARGO FINANCIAL MISSOURI, INC., WELLS FARGO FINANCIAL ACCEPTANCE, WELLS FARGO AUTO FINANCE, INC., WELLS FARGO FINANCIAL CAR, LLC (WF) allowed a previously disputed and removed account (which had resulted fraud identity theft) to be re-reported on this credit report and that WF failed and refused to remove the

returned account after he disputed it in accord with the FCRA.  Plaintiff seeks compensatory, statutory and punitive damages under the FCRA.

On March 1, 2008, plaintiff served a set of Requests for Admission and Documents on Defendant (WF).  WF requested an extension of time.  Plaintiff suggested, given the schedule set forth at the initial case management conference, that they serve what they had.  WF purported to serve its responses, "based upon the information obtain (sic) so far" on April 3, 2008.  It promised to supplement its responses with any further discoverable and relevant information within two weeks of that date.  On April 14, 2008, plaintiff lettered WF that he had still not received any of the promised supplements or documents promised.  On April 17, 2008, WF provided 8 pages of documents, apparently downloaded from WF's website.  This did not include any documents promised.  WF explained it was in the process of gathering information necessary to supplement its response, but its client contact was out of town and stated it would "supplement its responses as soon as it is able to gather the necessary information."

On April 18, 2008, plaintiff confirmed receipt of the website documents, but expressed dismay at the apparent indeterminate delay WF expressed an intent to indulge in.  Plaintiff requested an exact date when the "supplements" would be provided.  On April 23, 2008, plaintiff informed WF he had no response to the letter of April 18 and that he would assume WF would stand by its response unless he heard from WF that day.  WF responded to this letter, stating it had produced documents pursuant to the initial disclosure (though these are unsorted and woefully incomplete in light of the requests made), but was "still waiting on additional documents from another division in the bank that were to arrive yesterday, but did not . . . .[o]nce we receive these documents, and have an opportunity to review them, Wells Fargo will be in a position to produce the documents and supplement any necessary responses."

In response to WF's express intent to continue to delay, on April 24, 2008, reminded WF that it had a duty to respond in full upon first response, that its promised time to supplement the responses had past, and that it had insisted on setting early dates for potential adjudication of the matter.  There was no response to this letter.  Therefore, on April 28, 2008 plaintiff drafted a full

blown meet and confer letter of six single space pages with a request for response by the end of the week (May 2, 2008).

On May 7, 2008, and only after the plaintiff had lettered the court itself pursuant to this Department's Order re: Discovery Procedures in regard to the delay WF's failures were causing (May 5, 2008), did WF respond. In doing so, it stated "[c]ertain issues raised in your meet and confer letter can be resolved by Wells Fargo providing supplemental responses and producing further documents" and suggesting its objections were not boilerplate. However, no supplemental responses or documents were provided. It proposed that, "[r]ather than discussing the plethora of issues through written correspondence, the parties should confer, in person or via telephone, in an effort to resolve discovery issues." On May 9, 2008, plaintiff responded to the letter, stating his appreciation for the promise to provide further responses, disagreeing that the objections were not boilerplate and stating that given the May 7 letter indicated that because WF had not formulated a response to the meet and confer letter and had already breached promises to supplement responses, a conference would likely not be fruitful. The letter stated the importance of beginning to pin WF's position down. The letter stated that writings would be more helpful if future court consideration was required, rather than relying on the parties' characterization of conversations a conference would require.

On May 14, 2008, plaintiff lettered WF that he had received no response to the May 9, 2008 letter, and that the court had required the parties to meet and confer, that WF refused to meet and confer in any manner other than a conference, stated he would call at 1:00 p.m that day to meet and confer. He requested if that time was inconvenient, another time that day or the next be provided. On that same day, WF sent a letter narrowing issues (promising to provide supplemental response to interrogatories 1-3, suggesting 4 be discussed, suggesting admissions 5-8 be discussed, promising to supplement responses to admissions 9-12 "as permitted and required by FRCP 26(e)" that, in regard to admissions 13-15, it was "still discussing whether it is appropriate at this stage of the litigation to provide responses to requests seeking information seeking (sic) Wells Fargo's net worth" and promising to provide supplemental responses to

admission 33 and 34.

In regard to the document requests, WF's May 14 letter expressed that it had already produced 93 pages of documents, but ignored the fact they were not sorted and not responsive to the requests made, instead suggesting it did not have to, because they were produced as kept in the usual course of business pursuant to FRCP 34(b)(2)(E)(i).  It only provided one citation to which documents were responsive to which request, purporting that "all documents or computer screens which set forth or demonstrate account information that you are currently reporting about plaintiff" had been in the form page 1 alone of its initial disclosure.  WF, however, maintained, without discussing in any detail that requests 3, 26-34, 36-51, 59-64, 67-70 and 73-78 were each "overbroad, vague, and ambiguous because they failed to describe the document with reasonable particularity."  It more specifically suggested requests 5-7 were vague because they asked for an audit or audit trail and that requests 22 and 23 were so because they asked about matching algorithms used to correlate credit information with individuals.  It continued to suggest its objections were not boilerplate.  It suggested a teleconference was mandated.

A teleconference took place that day at 1:00 p.m.  However, after going through the interrogatories and admissions (to which WF agreed for the most part to supplement), WF terminated (after approximately ½ hour) the teleconference.  WF suggested it would inform the court it did so because it found plaintiff counsel's manner to be rude and condescending–this apparently prompted by the fact that plaintiff suggested that WF was attempted to create ambiguity in requests by mischaracterizing them, to wit, document request 5, by suggesting the term "audit trail" was ambiguous when that request asked for were documents showing an "audit or review" by WF to determine its compliance with 15 USC section 1681s-2(a).  Plaintiff confirmed this by letter of the same day and requested that the previously promised supplements, which should have been provided in the first place, be provided by week's end (May 16, 2008).

The same day, WF's counsel sent a letter stating it was its "latest (and presumably last)" attempt to meet and confer.  While continuing to assert the requests were vague and ambiguous, it continued to fail to substantiate that assertion.

On May 19, plaintiff again attempted to meet and confer, pointing out it was WF who had terminated the conference, the promised document production had been incomplete and improper to date and the objections not well stated or supported, that its thinking on the issues was not well thought out. Again, plaintiff invited to meet and confer. No effort was made by WF.

On May 27, 2008, plaintiff submitted to WF his version of the Joint Case Management Conference Statement for the Conference of June 3, 2008. While initially accepting it, subsequently WF changed it to include language that Wells Fargo entities other than Wells Fargo Missouri, Inc. were not proper and to include an assertion that it "has provided adequate discovery responses to plaintiff's non-objectionable discovery requests" despite the fact that it had not produced either the promised amended responses nor the documents it promised at that time.

On May 28, 2008, WF served so-called Supplemental responses to the Requests for Admission and Documents. However, the responses to admissions remained the same for the purposes of this motion except 33-34. Plaintiff moves to compel further response to these requests. In regard to the documents, WF, while professing to produce 100 pages of new documents, in fact most of the pages had been previously produced, consisting of the history of collection efforts and originating (and fraudulent) auto purchase documents.

Moreover, WF simply does not indicate whether it has produced documents (and, if so, by Bates Stamp No., where) it agreed to produce as to: requests 8 (communications to plaintiff), 9 (communications from plaintiff), 10 (quarterly profit and loss statements [not produced], 11 (current balance sheets and financial statements [not produced]) 13-14 (credit file) 15 (policy manuals) 16-17 (organizational charts for WF Missouri and WF Financial Acceptance) 18 (documents referred to in response to interrogatories) 20 (current reporting documents about plaintiff) 21 (archived records re plaintiff) 34 (documents with plaintiff's identifiers), 35 (employee training manuals), 52-55 (plaintiff's file, generally), 56 (policies, practices and procedure re reinvestigations) 57 (training of employees re reinvestigaton) 58 (all documents regarding reinvestigations in plaintiff's case) 65-66 (policies, practices and procedures re

collection and deletion of inaccurate information), 71 (policies, practices and procedure manuals re reinvestigation where data is disputed as inaccurate) 72 (first notice of application fraud). Plaintiff asks the court to compel WF to identify which documents are supposed to responsive to which demands, and/or which are supposed to have been produced already or which have not and to compel production of those WF has agreed to produce, but has not.

    WF continued to maintain the same objections made originally (and adding some in a few cases) as to the vast majority of requests for documents. As set forth in the attached and below, plaintiff seeks to compel further response and production as to these requests.

    WF has failed to even keep its promises about amending its responses and supplementing its documents production, much less justifying any of its objections. WF's discovery conduct is improper and is prejudicing plaintiff's preparation of his case, compelling this motion.

**LEGAL ARGUMENT**

A.    **THE COURT MUST COMPEL FURTHER RESPONSES TO THE REQUESTS FOR ADMISSION**

    Where responses to Requests for Admission are deficient or not timely filed, the requesting party may move for order to determine sufficiency pursuant to FRCP 36(a)(6). This includes the failure to make a reasonable inquiry. ***Asea v. Southern Pacific Transportation*** (9th Cir. 1981) 669 F2d 1242, 1247. Additionally, boilerplate objections are waived. ***Burlington Northern v. United States Dist. Ct.*** (9th Cir. 2005) 408 F3d 1142, 1148.

    The current status of the Requests for Admission, per the unchanged status since May 14, 2008 is that admissions 5-8 remain in dispute (WF continuing to contend that they are , that WF has failed to keep its promise to supplement responses to admissions 9-12 or that it intended to do so "as permitted and required by FRCP 26(e)" that, in regard to admissions 13-15, is apparently "still discussing whether it is appropriate at this stage of the litigation to provide responses to requests seeking information seeking (sic) Wells Fargo's net worth" and continues to breach its promise to provide supplemental responses to admission 33 and 34.

    **1.**    **ADMISSIONS 5-8 REGARDING WF'S "INTENT" ARE REASONABLY CALCULATED AND ARE NOT VAGUE, AMBIGUOUS OR OVERBROAD**

The standard for discovery is that it be "reasonably calculated to lead to the discovery of admissible evidence. FRCP 26(b)(1). The purpose of admissions is twofold: to determine the opposing party's contentions and to narrow the scope of the case by removing issues from the case once and for all. Advisory Comm. Note to 1970 Amendment to FRCP 36. A request is only ambiguous (or vague or overbroad) if it is so ambiguous that the responding party cannot, in good faith, frame an intelligent reply. Parties must "admit in the fullest extent possible, and explain in detail why other portions may not be admitted." *Marchand v. Mercy Medical Center* (9th Cir. 1994) 22 F3d 933, 938; Schwarzer, et al, *Federal Civil Procedure Before Trial*, section 11:2059-60 [suggesting to include an explanation of what is ambiguous and why it prevents an intelligent reply].

Here, WF has made no explanation of why it thinks Admissions 5-8 are not reasonably calculated nor why they are vague, ambiguous or overbroad. In failing to do in its initial response, or in any meet and confer effort, WF has waived such boilerplate objections not timely substantiating them under *Burlington Northern v. United States Dist. Ct.* (9th Cir. 2005) 408 F3d 1142, 1148. The requests are reasonably calculated. Under the Fair Credit Reporting Act/Fair and Accurate Transactions Act (the "ACT"), whether one acts willfully and whether punitive damages can be assessed is based in part on whether acts were intentional. Plaintiff has pled willful violation of the ACT. The request is not overbroad, vague nor ambiguous. Intention has a well accepted definition in the law. Here, the admissions

2. **WF HAS NO RIGHT TO NOT FULLY INVESTIGATE AND RESPOND TO REQUESTS FOR ADMISSION 9-12 AND 13-15**

WF seems to assert as to 9-12 and 13-15 that it does not need to fully respond to admissions at the time they are asked, but rather can amend at a time as it sees fit down the road. This is impermissible. Admissions require a reasonable inquiry and, if it is going to do so, must specifically state it has insufficient information at the time of the response in the response. FRCP 36(a)(4); Asea, supra at 1245-6. The inquiry must be in good faith. Advisory Comm. Notes to FRCP 36(a). The admission in issue are not the kind the require a great deal of investigation. Therefore, it does not appear the response are in good faith and response must be compelled.

//

### 3. WF SIMPLY HAS NOT KEPT ITS PROMISE TO AMEND ITS RESPONSES TO ADMISSIONS 9-12.

Finally, WF has promised to provide further responses to Admissions 9-12, but has failed to do so. This is prejudicing plaintiff's preparation of his case. The court must compel further responses.

## B. THE COURT MUST COMPEL FURTHER RESPONSES TO THE REQUESTS FOR DOCUMENTS

A motion to compel production is the procedure to enforce discovery where the responding party has replied, but interposes unfounded objections, makes evasive responses and/or fails to permit inspection. FRCP 37(a)(3), (4). Again, boilerplate objections are waived, as they are where no privilege log has been provided. **Burlington Northern v. United States Dist. Ct.** (9th Cir. 2005) 408 F3d 1142, 1148.

In responding to a request for documents, the responding party must agree to comply, state it is unable to comply (if so, it must state that a diligent search and reasonable inquiry was conducted and the reason why it is unable to comply) or state an objection. When an objection is stated, the reason for the objection must be made. FRCP 34(b)(2); **Burlington Northern, supra** at 1148. If a document is withheld based on a privilege, a privilege log must be provided. FRCP 26(b)(5).

Parties must produce requested documents "as they are kept in the usual course of business or organize and label them to correspond to the categories in the request." FRCP 34(b)(2)(E)(i).

### 1. IN REGARD TO DOCUMENTS WF AGREED TO PRODUCE, IT MUST BE COMPELLED TO PRODUCE THE DOCUMENTS AND/OR IDENTIFY WHICH DOCUMENTS IT HAS PRODUCED, WHICH ARE SUPPOSED TO BE RESPONSIVE TO WHICH REQUEST

While professing to produce 100 pages of new documents, in fact most of the pages had been previously produced, consisting of the history of collection efforts and originating (and fraudulent) auto purchase documents. While an apparent selection process has taken place, the documents have been produced in a "lump" form, not categorized or sorted in any fashion. Many

of the documents WF agreed to produce do not appear to found in the lump. WF simply does not indicate whether it has produced documents (and, if so, where) it agreed to produce as to: requests 8 (communications to plaintiff), 9 (communications from plaintiff), 10 (quarterly profit and loss statements [not produced], 11 (current balance sheets and financial statements [not produced]) 13-14 (credit file) 15 (policy manuals) 16-17 (organizational charts for WF Missouri and WF Financial Acceptance) 18 (documents referred to in response to interrogatories) 20 (current reporting documents about plaintiff)  21 (archived records re plaintiff) 34 (documents with plaintiff's identifiers), 35 (employee training manuals), 52-55 (plaintiff's file, generally), 56 (policies, practices and procedure re reinvestigations) 57 (training of employees re reinvestigaton) 58 (all documents regarding reinvestigations in plaintiff's case) 65-66 (policies, practices and procedures re collection and deletion of inaccurate information), 71 (policies, practices and procedure manuals re reinvestigation where data is disputed as inaccurate) 72 (first notice of application fraud).  As the documents appear to be a selection and not produced as kept in usual business practice, Plaintiff asks the court to compel WF to identify which documents are supposed to be responsive to which demands, and/or which are supposed to have been produced already or which have not and to compel production of those WF has agreed to produce, but has not.

2. **IN REGARD TO REQUESTS WF REFUSED TO PROVIDE DOCUMENTS IN RESPONSE TO, NONE OF ITS OBJECTIONS ARE MERITORIOUS**

WF refused to produce documents regarding plaintiff's requests 4-6, 12, 26, 28-33, 51, 59, 60, 62, 68, 70 and 77.  It waived objections by not sufficiently specifying the reasons for the objections, even after being afforded a multitude of opportunities to meet and confer.  Burlington Northern.

In any case, all of the requests are pertinent to issues in this case.  For instance, witness statements (4), reviews of compliance practices (5, 6), expenditures on reinvestigation practices (26), documents showing contractual and statutory duties relating to reinvestigation of inaccurate or incomplete information (28), deposition transcripts of individuals identified in the initial disclosure regarding reinvestigation of consumer disputes (29), deposition transcripts of

individuals identified in the initial disclosure regarding maintaining databases free of error (30), polices, practices and procedures insuring the maximum possible accuracy of data (31), polices, practices and procedures insuring accuracy of pre investigation data (32), polices, practices and procedures insuring accuracy of post investigation data (33), documents identifying WF employees having knowledge of this matter (51), contractual agreements with credit reporting agencies to whom WF provided information about plaintiff (59), training documents from credit reporting agencies provided to WF (60), documents regarding adverse effects on consumers when inaccurate reports are made (62), WF employee evaluations of those taking actions regarding plaintiff's dispute (68), documents regarding polices, practices and procedures when a fraud alert is on a report (70), documents regarding codes and abbreviations found in documents (77) are all directly relevant to issues in this case.  WF has simply not shown how any of the above requests are vague, ambiguous or overbroad.

3. **SHOULD OBJECTIONS NOT BE WAIVED, THE COURT SHOULD COMPEL A PRIVILEGE LOG FOR ALL RESPONSES IN WHICH WF MADE AN OBJECTION BASED ON ANY PRIVILEGE OR WORK PRODUCT PROTECTION**

The law is clear that a privilege log must be provided.  FRCP 26(b)(5), **Burlington, supra** at 1148.  **United States v. Construction Products Research** (2nd Cir. 1996) 73 F3d 464, 473. Department Standing Order re Discovery, Paragraph 5.  None has been provided.  The log must be compelled.

**CONCLUSION**

The Court should compel further response and production.

June_____, 2008                                    LAW OFFICE OF RON BOCHNER


                                                   BY _____
                                                   RON K. BOCHNER
                                                   Attorney for Plaintiff
                                                   Richard Howard