DONALD J. QUERIO (State Bar No. 54367)
djq@severson.com
MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
PETER H. BALES (State Bar No. 251345)
phb@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
WELLS FARGO FINANCIAL
MISSOURI, INC., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOWARD,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO FINANCIAL MISSOURI, INC., WELLS FARGO FINANCIAL ACCEPTANCE, WELLS FARGO AUTO FINANCE, INC., WELLS FARGO FINANCIAL CAR, LLC, and DOES 1-50,<br><br>　　　　　Defendants. | Case No.: CO7-05881 EDL<br><br>**WELLS FARGO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY**<br><br>Date:　　July 22, 2008<br>Time:　　9:00 a.m.<br>Dept.:　　E<br>Judge:　　The Hon. Elizabeth D. Laporte<br><br>Complaint Date: November 20, 2007<br><br>**Accompanying Documents:** Defendant's Response to Plaintiff's Statement of Discovery in Dispute; Declaration of Peter H. Bales; and Declaration of Mark D. Lonergan |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. TIMELINE OF THIS DISPUTE ....................................................................................... 4

IV. PLAINTIFF FAILED TO MEET AND CONFER REASONABLY AND IN GOOD FAITH ............................................................................................................ 6

V. PLAINTIFF'S REQUESTS FAIL TO DESCRIBE THE REQUESTED DOCUMENTS WITH "REASONABLE PARTICULARITY" ...................................... 8

VI. PLAINTIFF'S REQUESTS ARE OVERBROAD AND/OR IRRELEVANT, AND PLAINTIFF FAILED TO COMPLY WITH CIV. L.R. 37-2 ................................................................................................................ 9

VII. WELLS FARGO HAS NOT WAIVED ITS OBJECTIONS ......................................... 11

    A. Wells Fargo Cannot Reasonably Be Required To Provide A Privilege Log Before The Court Rules On The Permissible Scope Of Discovery. ............................................................................................. 11

    B. Wells Fargo Did Not Waive Its Objections By Serving "Boilerplate" Responses. .......................................................................... 12

VIII. WELLS FARGO PRODUCED DOCUMENTS AS THEY ARE KEPT IN THE USUAL COURSE OF BUSINESS .................................................................. 13

IX. PLAINTIFF'S REQUESTS FOR ADMISSION ARE VAGUE AND AMBIGUOUS .................................................................................................................. 14

X. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Burlington Northern & Sante Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*
    408 F.3d 1142 (9th Cir. 2005) ................................................................ 2, 5, 12

*Crossbow Tech., Inc. v. YH Tech, et al.,*
    2007 WL. 026876 (N.D. Cal.) ................................................................. 10

*Howard v. Blue Ridge Bank, et al.,*
    371 F. Supp. 2d 1139 (N.D. Cal. 2005) .................................................. 10

*In re IBM Peripheral EDP Devices Antitrust Litigation,*
    77 F.R.D. 39 (N.D. Cal. 1977) ................................................................ 8

*Kidwiler v. Progressive Paloverde Ins. Co.,*
    192 F.R.D. 193 (ND WV 2000) .............................................................. 8

*Parsons v. Jefferson-Pilot Corp.,*
    141 F.R.D. 408 (M.D.N.C. 1992) ........................................................... 8

*Phleger v. Countrywide Home Loans, Inc.,*
    2008 WL. 65677 (N.D. Cal. 2008) .......................................................... 6

*Soto v. City of Concord,*
    162 F.R.D. 603 (N.D. Cal. 1995) ............................................................ 6

*Thompson v. Dept. of Housing & Urban Develop.,*
    199 F.R.D. 168 (D. Md. 2001) ................................................................ 9

*U.S. v. Philip Morris Inc.,*
    347 F.3d 951 (D.C. Cir. 2003) ................................................................ 11

*Vardon Golf Co., Inc. v. BBMG Golf, Ltd.,*
    156 F.R.D. 641 (N.D. Il. 1994) ............................................................... 9

## STATUTES

15 U.S.C.
    §1681 ................................................................................................ 2, 9,10

Federal Rules of Civil Procedure
    Rule 26 ............................................................................................... 10, 11
    Rule 34 ............................................................................................... 1, 7, 8, 12, 13
    Rule 37 ............................................................................................... 1, 7

# I.

# INTRODUCTION

Plaintiff seeks an order from the Court compelling defendant Wells Fargo Financial Missouri, Inc. ("Wells Fargo") to provide further responses to seven requests for admission and fifty categories of document requests. Plaintiff's motion to compel should be denied for multiple reasons.

First and foremost, plaintiff failed (and in fact refused) to comply with his meet and confer obligations under FRCP Rule 37, Civ. L.R. 37-1(a) and this Court's "Order Re Discovery Procedures." Plaintiff was required to confer with Wells Fargo in a reasonable and "good faith" attempt to resolve the issues on this motion, but did not. He repeatedly rejected Wells Fargo's requests to confer regarding the discovery requests at issue. Though he eventually capitulated to a call with Wells Fargo, plaintiff refused to discuss individual requests; dismissed all of Wells Fargo's objections as "boilerplate," without merit and "waived;" refused to clarify or narrow even a single request; and, was condescending to the point that Wells Fargo was forced to end the call after a few minutes. The Court should deny the motion based solely upon plaintiff's refusal to comply with his meet and confer obligations, particularly since many of the disputes could have been resolved had plaintiff met and conferred reasonably and in good faith.

Should the Court decide to consider this motion on its merits, the motion should be denied on the merits for a number of different reasons.

Plaintiff's requests do not describe the documents requested "with reasonable particularity," as required under FRCP Rule 34(b). Instead of identifying the individual document or category of documents to be produced, plaintiff has propounded broad, all-encompassing requests. For example, he ask Wells Fargo to produce any documents "which address the accuracy, truthfulness or reliability" of its credit reporting, or which "refer[] or relate[] to any fact(s) which may be relevant in this lawsuit." Such requests are overbroad, not reasonably tailored to the issues of this case, and place Wells Fargo in the impossible position of having to guess which documents it should search for and produce.

- 1 -

07515/0096/675214.1    WELLS FARGO'S OPPOSITION TO MOTION TO COMPEL
Case No.: CO7-05881 EDL

1    Other requests are vague and ambiguous, overbroad and/or ask for information which is
2 not relevant to this dispute. For example, plaintiff asks the metaphysical question of whether
3 Wells Fargo "intended its actions," without even specifying which of Wells Fargo's actions to
4 which he refers. He asks for production of internal budgets for a five year period; "audits" (an
5 undefined term) or reviews of Wells Fargo's credit reporting practices in general, not limited to
6 plaintiff's circumstances; and various other categories of documents which are overbroad and not
7 relevant to this narrow dispute about whether Wells Fargo improperly verified a single entry on
8 plaintiff's Trans Union credit report when it was disputed in 2007.

9    Though plaintiff argues that the Court should refuse to consider Wells Fargo's objections,
10 he is wrong. Wells Fargo did not "waive" its objections by failing to provide a narrative
11 description of the bases for those objections in the responses themselves, and *Burlington*
12 *Northern & Sante Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.* ("*Burlington Northern*"), 408
13 F.3d 1142 (9th Cir. 2005) does not support plaintiff's claim of waiver. Particularly given the
14 overbreadth and burdensome nature of plaintiffs' discovery requests, Wells Fargo was not
15 required to provide a privilege log identifying specific documents until the requests were properly
16 narrowed, which plaintiff has refused to do.

17    Finally, there is no merit to plaintiff's complaint about the nature of Wells Fargo's
18 document production, as the more than 400 pages of documents produced by Wells Fargo were
19 properly produced as kept in the ordinary course of business.

20    For all these reasons, explained in more detail below, the motion to compel should be
21 denied.

## II.

## BACKGROUND

24    Plaintiff filed this action alleging that Wells Fargo failed to comply with the requirements
25 of 15 USC 1681s-2 of the Fair Credit Reporting Act or "FCRA" by failing to investigate a dispute
26 received from a credit reporting agency. Plaintiff alleges two claims: (1) for negligently failing to
27 comply with 15 USC 1681s-2 and (2) for willfully failing to comply with that statute.
28

The underlying account was for the purchase and finance of an automobile; it was opened in 2003 in the name of Richard Howard and another individual. In 2005, plaintiff disputed his obligation for this debt and, when it was not removed from his credit report, he filed suit against a number of entities, including the three major credit reporting agencies and Wells Fargo. In June 2005, as part of the settlement of that lawsuit, Wells Fargo instructed all credit reporting agencies to delete the account from plaintiff's report. Wells Fargo also "blocked" the account, internally, to prevent it from reporting to the credit reporting agencies.

In October of 2006, Wells Fargo converted to a new credit management program. When the system conversion occurred, the account at issue was renumbered and the block was inadvertently lifted allowing the account to be reported to the agencies. However, Wells Fargo had previously instructed the agencies not to report the account on plaintiff's file, which instruction should have been followed notwithstanding the renumbering of the account.

In March 2007, plaintiff apparently noticed that one of the credit reporting agencies, Trans Union, was again reporting the account on plaintiff's credit report. In June 2007, his counsel sent a dispute letter to Trans Union. After receiving that letter, Trans Union sent a consumer dispute verification form to Wells Fargo; however, that "CDV" did not notify Wells Fargo that the consumer claimed the account was the result of identity fraud or that the account had been fraudulently opened. Wells Fargo did not verify the account as accurate, as plaintiff claims in this lawsuit; rather, it instructed Trans Union to report that the customer disputed the account.

In July 2007, counsel for plaintiff apparently sent another dispute letter to Trans Union. For reasons unknown, Trans Union did not notify Wells Fargo of plaintiff's second dispute until December 2007. It was only in this second CDV form sent to Wells Fargo in December—not in the first one sent in June 2007—that Trans Union notified Wells Fargo that plaintiff was claiming identity fraud and that the account had been fraudulently opened.[1] With this information Wells Fargo immediately reinstructed Trans Union to report that the consumer disputed the account. After Wells Fargo had completed its investigation, within thirty days of receiving the dispute,

---

[1] Plaintiff has a second lawsuit pending against Trans Union in California state court, in Contra Costa County.

- 3 -

07515/0096/675214.1                                WELLS FARGO'S OPPOSITION TO MOTION TO COMPEL
                                                                    Case No.: CO7-05881 EDL

Wells Fargo again requested that all credit reporting agencies, including Trans Union, delete the account from plaintiff's credit report due to fraud.

## III.

## TIMELINE OF THIS DISPUTE

On March 1, 2008, plaintiff served 39 requests for admission, 6 interrogatories and 78 requests for documents on Wells Fargo. (Bales Decl., ¶2.) In light of the breadth of the discovery propounded, Wells Fargo requested a two week extension. Plaintiff's counsel declined. He responded by insisting that Wells Fargo supply whatever information it had gathered as of the time of its response, and that it supplement its responses two weeks later. (Bales Decl., ¶4.) Wells Fargo served its responses on April 3, 2008. Many responsive documents had already been produced by Wells Fargo on March 18 as part of its Rule 26 disclosures. (Bales Decl., ¶3.)

On April 17, 2008, within two weeks of serving its initial responses, Well Fargo supplemented its response by producing additional documents. Plaintiff characterizes these documents as "website documents" (Mot. to Compel ("Motion"), p. 2, ¶1) but they were not; they consisted of policies and procedures from Wells Fargo's credit dispute department, together with organizational charts requested by plaintiff. (Bales Decl., ¶4.)

Over the next two weeks plaintiff sent Wells Fargo a series of letters in which he stated that he considered Wells Fargo's document production to be complete and that he intended to file a motion to compel.[2] Wells Fargo responded by explaining that it was continuing to gather relevant/responsive documents from different areas within the company, and that it would abide by its duty to supplement its responses under the Federal Rules of Civil Procedure. (Bales Decl., ¶5; Ex.D.)

On April 28, plaintiff faxed what he characterized as a "meet and confer" letter to Wells Fargo. The six page letter mentioned ninety-one discovery requests, but it did not address those

---

[2] An April 18, 2008 letter requested Wells Fargo to "confirm this is all Wells Fargo will produce in this matter." (Ex. A.) An April 23, 2008 letter stated that plaintiff's counsel would "assume your answers are complete if I do not have a date for full and final completion" by 5:00 p.m. that same day. (Ex. B.) Then, in an April 24, 2008 letter plaintiff's counsel stated he would treat Wells Fargo's responses as "permanent and stationary" as of the following day. (Ex. C.)

requests or Wells Fargo's objections in any detail. The letter simply asserted that all of Wells Fargo's objections were "boilerplate" and had been "waived" by its failure to elaborate on or explain the bases for its objections in the responses. (Ex. E, citing *Burlington Northern*.) The letter demanded that Wells Fargo provide amended responses to all of the listed discovery requests "in full, without objection by week's end," or within four days. (Ex. E.)

Wells Fargo thereafter made numerous attempts to set up a meet and confer conference with plaintiff's counsel to discuss the responses and objections at issue. It emailed plaintiff on May 5, 2008 requesting a conference call. It made a second request to confer, in person or via telephone, in a May 7 letter which stated that "at a minimum, we can (and in fact are required to) make an effort to narrow the issues for the Court to decide on any potential motion to compel." (Ex. F.) Plaintiff responded that a "tele- or other conference would be a waste of time when you have not even thought about the bases for your objections or responses." (Ex. G.)

Wells Fargo again attempted to arrange a conference on May 14. This time it sent plaintiff a four page letter which outlined the issues on which it believed the parties must meet and confer, and which provide examples of the difficulties it had with plaintiff's discovery requests. (Bales Decl., ¶8; Ex. H.)

Plaintiff finally agreed to have a conference call on that date. That call began at 1:00 pm and lasted less than half an hour. Plaintiff's counsel was unwilling to discuss individual discovery requests or objections. He dismissed all of Wells Fargo's objections as "boilerplate," and took the position that they had been waived under *Burlington Northern* because Wells Fargo had not explained the objections in the responses themselves. Each time Wells Fargo attempted to explain why a particular request was ambiguous, overbroad, not reasonably particular or objectionable for some other reason, plaintiff's counsel would simply read the request to counsel for Wells Fargo. On multiple occasions plaintiff's counsel asked counsel for Wells Fargo whether they could read, and once he inquired whether he should read a particular request "for a third time"? Wells Fargo ended the call after plaintiff's counsel's demeanor became condescending, and after it was clear that the call would be unproductive. (Bales Decl., ¶¶9-10.); Lonergan Decl., ¶2); (Ex. I.)

1  Nevertheless, Wells Fargo has agreed to provide (and in fact has provided) amended
2  responses to certain of the discovery requests at issue—including some requests which plaintiff
3  has still included in this motion—and has produced additional documents as they are located.[3]
4  Wells Fargo has produced over 400 pages of documents which it believes are relevant and
5  responsive to plaintiff's requests.

**IV.**

**PLAINTIFF FAILED TO MEET AND CONFER
REASONABLY AND IN GOOD FAITH**

This Court will "not consider discovery motions unless the moving party has complied with Fed. R. Civ. P. 37 and Civ. L.R. 37-1(a)." Pursuant to Fed. R. Civ. P. 37, Civil L.R. 37-1(a), and this Court's "Order Re Discovery Procedures," all parties are required to confer in good faith with opposing counsel in an effort to resolve the dispute without court intervention. "While the exact parameters of what satisfies the 'meet and confer' requirement are not laid out by the local rules, at a minimum, it requires a telephone call with 'direct dialogue and discussion.' Furthermore, this discussion should be made in 'good faith.'" *Phleger v. Countrywide Home Loans, Inc.*, 2008 WL 65677, *3-4 (N.D. Cal. 2008); citing *Soto v. City of Concord*, 162 F.R.D. 603, 622-23 (N.D. Cal. 1995) (conference requires an attempt to have a live exchange of ideas and opinions).

Here, plaintiff plainly ignored his obligations to meet and confer, and his motion to compel should be denied on that basis alone. As an initial matter, he flatly refused to meet and confer, asserting that a "tele- or other conference would be a waste of time…" (Ex. G.) Eventually, after three attempts by Wells Fargo to set up a conference, plaintiff reluctantly agreed to have a telephone conference to discuss discovery issues.

---

[3] Plaintiff includes certain requests which Wells Fargo cannot be further compelled to respond to. For example Wells Fargo responded to Request for Production No. 69 that "No such documents exist," but plaintiff still includes this request in his motion. Another example is Request for Production No. 16, which seeks organizational charts from Wells Fargo Financial Missouri, Inc. and Wells Fargo has already provided such documents. (Bales Decl., ¶4.)

- 6 -

1    A "direct dialogue" did occur, but plaintiff failed to address the parties' disputes reasonably or in "good faith." Throughout the call Wells Fargo attempted to discuss individual requests, including what it was that plaintiff was seeking, whether the request could be clarified or narrowed, the basis for Wells Fargo's objections, and whether plaintiff would be willing to clarify, withdraw or narrow specific requests. Plaintiff's counsel repeatedly asserted that all of Wells Fargo's objections were boilerplate, that none of them has merit, that all of plaintiff's discovery requests were clear and understandable, that none of them was overbroad or difficult to understand. Plaintiff's counsel refused to withdraw or clarify even one request, and took the position that he was not required to discuss individual requests. (Bales Decl., ¶9.)

Throughout the conference plaintiff's counsel's demeanor was unyielding, unproductive and even condescending. Counsel repeatedly interrupted counsel for Wells Fargo, reiterating that the discovery requests were clear and understandable. On at least two occasions he asked counsel for Wells Fargo whether they could read. Each time counsel for Wells Fargo began to explain why a particular request was unclear, counsel would simply read the request aloud (at one point asking if he needed to read a particular request a third time). At that point, counsel for Wells Fargo stated that he believed that plaintiff's counsel's approach was condescending and that the call would not be productive, and he ended the call. (Bales Decl. ¶10.); (Lonergan Decl., ¶2.); (Ex. I.)

Had plaintiff met and conferred reasonably and in good faith, it is likely that many of the disputes before the Court on this motion could have been resolved, and that plaintiff would have clarified or narrowed his discovery requests. The Court can and should deny the motion based upon plaintiff's failure to comply with FRCP Rule 37, Civ. L.R. 37-1(a) and this Court's Discovery Order.

# V.

## PLAINTIFF'S REQUESTS FAIL TO DESCRIBE THE REQUESTED DOCUMENTS WITH "REASONABLE PARTICULARITY"

Under FRCP Rule 34(b), a request for production of documents must describe the documents requested with "reasonable particularity." Fed. R. Civ. P. (34)(b). As a different judge of this Court explained the rule:

> "…Rule 34(b) on production of documents, provides that the request shall set forth the items either by individual item or by category, and describe each item and category with reasonable particularity. While this requirement is not overly strict, the court must be given enough information to enable it to rule intelligently on objections." *In re IBM Peripheral EDP Devices Antitrust Litigation* 77 F.R.D. 39, 42 (N.D. Cal. 1977).

The test for reasonable particularity is whether the request places the party upon "reasonable notice of what is called for and what is not." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 FRD 193, 202 (ND WV 2000); citing *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992).

Plaintiff's requests fail that test, as Wells Fargo cannot reasonably identify for many of the requests what documents plaintiff is seeking. While the fifty individual requests at issue are discussed in Wells Fargo's separate statement, the following are a few examples of plaintiff's failure to describe documents with the required reasonable particularity.

In Request No. 61 plaintiff asks Wells Fargo to "Produce all documents which address the accuracy, truthfulness, or reliability of your reporting to the credit reporting agencies." It is unclear what documents plaintiff is requesting. Wells Fargo cannot be sure whether plaintiff is seeking procedure manuals relating to its credit reporting practices (which have been produced); individual consumer disputes or complaint letters; internal reviews of Wells Fargo' practices (sought in another category, and overbroad/irrelevant in any event); Wells Fargo's responses to other credit reporting complaints; or, something else. This request makes no attempt to set forth documents by "individual item or by category with reasonable particularity." *In re IBM Peripheral EDP Devices Antitrust Litigation* 77 F.R.D. at 42.

- 8 -

Worse yet is Request No. 75, in which plaintiff asks Wells Fargo to:

> "Produce all documents or correspondence in your, or your, attorney's, possession that refers to or relates to any fact(s) which may be relevant in this lawsuit excluding letters between you and your attorney."

Wells Fargo cannot reasonably be expected to produce "all documents" relating to facts which "may be relevant." The only limiting aspect of this request is that plaintiff is not seeking letters between counsel for Wells Fargo and Wells Fargo. Other than that, Wells Fargo cannot even begin to ascertain what kind of documents plaintiff is seeking.

## VI.

### PLAINTIFF'S REQUESTS ARE OVERBROAD AND/OR IRRELEVANT, AND PLAINTIFF FAILED TO COMPLY WITH CIV. L.R. 37-2

To be discoverable in a federal court action, the documents sought must be both relevant and likely to lead to the discovery of admissible evidence. *Thompson v. Dept. of Housing & Urban Develop.*, 199 F.R.D. 168, 170 (D. Md. 2001). Plaintiff bears the burden of articulating a plausible chain of inferences showing how the discovery of the items sought would lead to admissible evidence. *Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 651 (N.D. Il. 1994).

Here, plaintiff's requests repeatedly seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and plaintiff fails to articulate how the documents are relevant. For example, Request No. 26 seeks "any budgets or projections prepared within the preceding five years, allocating resources or expenditures to the conduction of reinvestigation under 15 U.S.C. §1681-s2." Plaintiff argues in his motion that discovery into the question of how much money Wells Fargo spends on the reinvestigation of credit disputes "goes to the issue of whether defendant's acts were willful." (See Plaintiff's Statement of Discovery in Dispute, p. 16.) However, the alleged failure to investigate which forms the basis for plaintiff's claims took place in 2007 and, in any event, FCRA provides a two-year statute of limitations for plaintiff's claims. 15 U.S.C § 1681p. Plaintiff has not shown and

cannot show why Wells Fargo's corporate budgets for a five year period are relevant to whether its actions in 2007 with respect to plaintiff's account were or were not "willful."[4]

Likewise, Request No. 5 seeks "all documents showing an audit or review by you of practices to determine compliance with 15 USC section 1681s-2(a)." Wells Fargo has serious difficulty responding to this request as drafted. It is overly broad because it provides no applicable time frame in which to even begin searching for responsive documents. It is vague and ambiguous as to what documents plaintiff may view as falling within the category of an "audit" or review.

Even if Wells Fargo could ascertain which documents plaintiff is seeking, such documents would be irrelevant. The request seeks documents relating to compliance with 15 U.S.C. 1681s-2(a), which provides no private right of action and under which statute plaintiff is not suing. Plaintiff should be well aware of this fact, as it was part of this Court's holding in granting Wells Fargo's motion to dismiss in plaintiff's first lawsuit. *Howard v. Blue Ridge Bank, et al.*, 371 F.Supp.2d 1139, 1147 (N.D. Cal. 2005) (holding that a private right of action exists against furnishers under 15 U.S.C. § 1681s-2(b), but not subsection (a) of that provision).

Another example is Request No. 30, in which plaintiff asks Wells Fargo to produce the transcript of any deposition ever given by any individual identified in Wells Fargo's Rule 26 disclosures. Plaintiff makes no attempt to limit the requested documents or explain how or why such testimony is relevant to plaintiff's dispute.

Importantly, the Civil Local Rules relating to discovery motions specify—for each request at issue—that the "moving papers *must detail* the basis for the party's contention that it is entitled to the requested discovery *and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.*" *Crossbow Tech., Inc. v. YH Tech, et al.*, 2007 WL 026876, *2 (N.D. Cal.); citing Civ. L.R. 37-2; emphasis added. Rule 26(b)(2) provides, in part, that a court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).

---

[4] Other requests are likewise overbroad, seeking documents well outside of the 2007 time frame at issue in this case. See, e.g., Request Nos. 2, 10, 54, 58, 59, and 66.

- 10 -

Plaintiff makes no attempt to satisfy his obligations under Civ. L.R. 37-2 in his motion. Many, if not most, of the 50 document requests at issue are "unreasonably cumulative or duplicative" of other requests. For example, Request No. 15 asks Wells Fargo to:

> "Please produce all policy manuals, procedure manuals or other documents, which address your policies, practices, or procedures in correcting updating, modifying and/or deleting or suppressing credit data or historical address data which is disputed as inaccurate."

Wells Fargo has responded to that request by producing the policy and procedure manuals, maintained within its credit dispute and fraud departments, which relate to the handling of credit reporting disputes. Nevertheless, plaintiff seeks to compel Wells Fargo to respond to 13 other categories with redundant and overlapping requests for policy and procedure manuals. (See Request Nos. 28, 31, 32, 33, 35, 39, 56, 57, 65, 66, 69, 70 and 71) Plaintiff has failed to show why these requests should not be considered unreasonably cumulative or duplicative, and his motion should be denied based upon his failure to do so.

## VII.

## WELLS FARGO HAS NOT WAIVED ITS OBJECTIONS

### A. Wells Fargo Cannot Reasonably Be Required To Provide A Privilege Log Before The Court Rules On The Permissible Scope Of Discovery.

Plaintiff contends throughout his motion that a privilege log must be provided and that all of Wells Fargo's objections are waived for failing to provide such a log. (See Mot. to Compel, p. 8, ln. 10-12). This contention is incorrect.

"Rule 26(b)(5) requires the party to note its privilege objection and to describe the document only when the document is 'otherwise discoverable.'" *U.S. v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). "This means, as the 1993 Advisory Committee Notes to Rule 26(b)(5) explain, that if a broad discovery request includes an allegedly privileged document, and if there is an objection to the scope of the request, the *court should first decide whether the objection covers the document.*" *Id.*, emphasis added. "In short, if a party's pending objections apply to the allegedly privileged documents, the party *need not log the document until the court rules on its objections.*" *Id.*, emphasis added.

**1**  As outlined in its opposition to this motion, Wells Fargo has objected to the requests on
**2**  numerous grounds other than privilege. Wells Fargo cannot logically be expected to provide a
**3**  privilege log of documents when it cannot ascertain which documents plaintiff is legitimately
**4**  seeking and when the Court has not yet ruled on the documents to which plaintiff is entitled.[5]
**5**  Wells Fargo respectfully requests that the Court first rule on its other applicable objections and
**6**  that it order plaintiff to narrow the breadth of his discovery requests, at a minimum. At that time,
**7**  Well Fargo would be able to provide a specific log of documents being withheld on the basis of
**8**  attorney-client privilege, self-critical analysis privilege, right to privacy, or any other applicable
**9**  privilege.

**10**        **B.   Wells Fargo Did Not Waive Its Objections By Serving "Boilerplate" Responses.**

**11**

**12**  Plaintiff continuously argues—throughout his motion and during the truncated "meet and
**13**  confer" process which preceded it—that Wells Fargo has waived all objections, citing *Burlington
**14**  Northern,* 408 F.3d 1142, 1148 (9th Cir. 2005) for the proposition that "boilerplate objections are
**15**  waived." See Motion, p. 6, ln. 17-18. But plaintiff is wrong, for several reasons.

**16**  First, Wells Fargo's objections are not "boilerplate." It made specific, valid objections
**17**  which were based upon the particular request at issue. Contrary to the position taken by plaintiff,
**18**  Wells Fargo was not required to elaborate on the basis for each objection in the response itself in
**19**  order to preserve it.

**20**  Second, plaintiff is attempting to extend that case well beyond its actual holding.
**21**  *Burlington Northern* dealt only with objections based on privilege, not with objections based
**22**  upon relevance, scope of discovery, etc. *Burlington Northern*, 408 F.3d at 1149. As just
**23**  explained, it would be nonsensical to expect a responding party to log documents when the scope
**24**  of the request is unclear or in dispute.

**25**

**26**

---

**27**      [5] For example, Wells Fargo cannot reasonably be expected to identify and log any and all privileged documents which might be found within the deposition transcripts of its employees (Request No. 30) or which could be construed as relating to facts "which may be
**28**  relevant" (Request No. 75).

- 12 -

Finally, the Ninth Circuit rejected the "per se waiver rule" advocated by plaintiff, that is, a rule by which a privilege is deemed waived if a log is not produced within Rule 34's 30-day time limit." *Id.* It held that "a district court should make a case-by-case determination" and then provided a lists of factors the trial court should consider in making that determination, including the "particular circumstances of the litigation" that make responding to discovery unusually easy or unusually hard. *Ibid.* Plaintiff's document requests fall in the latter category for the reasons addressed throughout this opposition.[6]

## VIII.

### WELLS FARGO PRODUCED DOCUMENTS AS THEY ARE KEPT IN THE USUAL COURSE OF BUSINESS

Plaintiff also requests the Court to compel Wells Fargo to "identify which documents are responsive to which demands…" See Mot. to Compel, p. 9, ln 13-16. But the federal rules do not require such measures. Rule 34 allows Wells Fargo to produce requested documents "as they are kept in the usual course of business" *or* "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); emphasis added. The purpose of this rule is to prevent parties from deliberately mixing critical documents with others in the hope of obscuring their significance. Adv. Comm. Notes to 1970 Amendment to Fed. R. Civ. P. 34(b).

Wells Fargo has produced just over 400 pages of documents. (Bales Decl., ¶13.) Although the documents were not produced in a single production—which the rules do not require in any event—Wells Fargo did produce them as they are kept in the usual course of business. Wells Fargo has no intention of withholding discoverable and relevant information from plaintiff, and has not done so, nor has it deliberately mixed documents. Thus, plaintiff's request to force Wells Fargo to match up the documents produced with his 50 categories of demands should be denied.

---

[6] The Ninth Circuit acknowledged in a footnote that "we are aware (and take this opportunity to make district courts aware) that litigants seeking discovery may attempt to abuse the rule we announce today by propounding *exhaustive and simultaneous discovery requests*." *Id.* at 1149, fn. 3; emphasis added.

## IX.

## PLAINTIFF'S REQUESTS FOR ADMISSION ARE VAGUE AND AMBIGUOUS

Plaintiff's "Statement of Discovery in Dispute" lists Requests For Admission Nos. 5-8 and 13-15 as the requests that are in dispute. His memorandum also addresses Request Nos. 9-12. However, Wells Fargo already supplemented its responses to these four requests on May 28, before this motion was filed. (Bales Decl. ¶11.); (Ex. J.) Therefore, Wells Fargo assumes that plaintiff's arguments regarding these requests are moot. Wells Fargo has also agreed to provide supplemental responses to Request Nos. 13-15, which seek information relating to Wells Fargo's net worth (it has not yet obtained the information sufficient to allow it to respond), so these requests are not in dispute.

Only Request Nos. 5-8 remain at issue. Requests Nos. 5 and 6 ask Wells Fargo to admit whether or not "you intended your actions in 2006 and 2007 when you reported to Trans Union that plaintiff was personally liable to you on an account." Requests Nos. 7-8 similarly ask Wells Fargo to admit whether or not "the investigation you performed in 2007 regarding plaintiff was accomplished as you intended." Wells Fargo objected to the requests as vague and ambiguous, including their use of the term "you intended your actions." Plaintiff argue that "The request [sic] is not overbroad, vague nor ambiguous. Intention has a well accepted definition in the law. Here, the admissions [sic; the paragraph ends at this point] . . . " See Motion, p. 7, ln 17-19.

It is unclear which actions plaintiff is referring to because there are several "actions" or "investigations" by Wells Fargo which are potentially at issue in this lawsuit. Wells Fargo lifted the credit reporting block during the system conversion. It also investigated and responded to two different disputes initiated on plaintiff's account, one in June 2007 and one in December 2007. In neither case did Wells Fargo "report to Trans Union that plaintiff was personally liable . . . on an account," which is the subject matter of requests Nos. 5-6. Without further clarity, Wells Fargo cannot respond to these requests.

07515/0096/675214.1          WELLS FARGO'S OPPOSITION TO MOTION TO COMPEL
                             Case No.: CO7-05881 EDL

## X.

## CONCLUSION

For all of the reasons set forth above, and in Wells Fargo's separate statement, Wells Fargo respectfully requests that the Court deny plaintiff's motion to compel.

DATED: June 24, 2008

SEVERSON & WERSON
A Professional Corporation


By: _____/ S / Peter H. Bales_____
          Peter H. Bales

Attorneys for Defendant
WELLS FARGO FINANCIAL MISSOURI, INC.