IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD HOWARD,

    Plaintiff,

v.

WELLS FARGO FINANCIAL ACCEPTANCE, et al.,

    Defendants.

No. C-07-5881 EDL

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Before the Court is Defendants' Motion for Summary Judgment filed pursuant to this Court's October 20, 2008 scheduling order. In this case, Plaintiff contends that Defendants allowed a previously disputed and removed credit account, which had resulted from identity theft, to be re-reported on his credit report and that Wells Fargo failed to remove the account after he disputed it. His complaint alleges two claims: (1) negligent failure to comply with 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act; and (2) willful failure to comply with that statute. For the reasons stated at the hearing and in this Order, Defendants' Motion is granted in part and denied in part.

**Factual Background**

    In November 2004, Plaintiff sued Wells Fargo and the three national credit reporting agencies based upon information that was being reported in his credit report relating to a Wells Fargo account for an auto loan that was opened in Plaintiff's name as a result of identity theft. See Clement Decl. ¶ 2; Howard Decl. ¶ 2. That matter settled in 2005, and the inaccurate credit report line was removed. See Clement Decl. ¶¶ 2, 3; Howard Decl. ¶ 2; Lonergan Decl. ¶ 2; Ex. A; see Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139 (N.D. Cal. 2005). Wells Fargo also "blocked"

the account, meaning that Wells Fargo took steps internally to prevent any information regarding that account from being reported to any credit reporting agency. See Clement Decl. ¶ 3.

In October 2006, Wells Fargo began to use a new credit management program for reporting Wells Fargo accounts to the national credit reporting agencies. See Clement Decl. ¶ 4. The system prior to October 2006 was called System 2, and the system used after October 2006 is called SHAW. See id. Prior to converting to the SHAW system, Wells Fargo notified the three credit reporting agencies that the account numbers as reported under System 2 would be renumbered under the SHAW system. See id. Wells Fargo made this notification so that the agencies would not change the way they reported a particular account merely because the account number changed. See id. After the system conversion, in at least March 2007, information regarding a Wells Fargo auto loan appeared on Plaintiff's Trans Union report. See Clement Decl. p 5; Howard Decl. ¶¶ 3-4.[1] This new account bore similar information as the previously removed entry. See Howard Decl. ¶ 4.

On June 12, 2007, Plaintiff's counsel sent a letter to Trans Union stating that the account was "previously identified and acknowledged to be the result of identity theft. . . ." See Clement Decl. ¶ 6; Ex. D; Bochner Decl. ¶ 4; Ex. A. Wells Fargo Credit Dispute Resolution department did not receive a copy of this letter from Plaintiff, his counsel or Trans Union. See Clement Decl. ¶ 6. Instead, on June 22, 2007, Trans Union sent a customer dispute verification (CDV) form to Wells Fargo. See Clement Decl. ¶ 7. The form is used to notify the furnisher of credit information, such as Wells Fargo, that a consumer has a dispute about the accuracy or validity of information in a credit report. See Clement Decl. ¶ 7. The June 22, 2007 CDV did not state that Plaintiff was the victim of identity theft. See Clement Decl. ¶ 8. Rather, the dispute listed "Dispute Code 1:104," which means: "Claims account take-over fraudulent charges made on account. Verify signature provide or confirm complete ID." See Clement Decl. ¶ 8. It appears that Defendants did not do anything in response to the dispute code 1:104 because no charges can be made on an auto account. See Clement Decl. ¶ 8 ("Rather, the customer obtains credit in a fixed amount to purchase the auto,

---

[1] Although Defendant has provided evidence that no other credit reporting agency made the same mistake (see Clement Decl. ¶ 5 (stating that Experion and Equifax did not report the disputed account)), Plaintiff's counsel disputed that fact at oral argument (see Howard Decl. ¶ 5 (stating that he obtained an Experion report)). Even if there was a triable question of fact as to this issue, such a dispute would not be material for purposes of this summary judgment motion.

2

1 and the balance is paid down over time as the customer makes payments, but no new charges can be
2 made to such as account (and it is therefore not possible to verify a signature for such charges).").
3 The form also contained "Dispute Code 2:2," which means: "Belongs to another individual with
4 same/similar name. Provide or complete ID." See id. When Wells Fargo receives dispute code 2:2,
5 its practice is to verify that the personal identifying information for the account matches the
6 information provided by the credit reporting agency, which it did by verifying the name, date of
7 birth, and social security number as they appeared on Defendants' records. See Clement Decl. ¶¶ 8-
8 9. The June 22, 2007 CDV did not include the code for identity theft, "Dispute Code 1:103," which
9 would have triggered a referral to Wells Fargo's fraud department, which investigates identity theft.
10 See Clement Decl. ¶¶ 8-9.

11 On June 23, 2007, Wells Fargo responded to the June 22, 2007 CDV with the personal
12 identifying information that it had verified in its investigation by the asset recovery management
13 team. See Clement Decl. ¶ 9; Ex. E. The code "XB" on the response is an instruction to the credit
14 reporting agency to report that the consumer disputes the account. See Clement Decl. ¶ 9. Wells
15 Fargo sent a universal data form to the major credit reporting agencies stating that the account had
16 been charged off. See Clement Decl. ¶ 9.

17 On July 9, 2007, Plaintiff's counsel sent another letter to Trans Union disputing the account.
18 See Clement Decl. ¶ 10; Ex. F. This letter states that Plaintiff would like to add a consumer
19 statement to his credit report that the "account is a result of identity theft." See Clement Decl. ¶ 10;
20 Ex. F. Neither Plaintiff nor his counsel nor Trans Union provided a copy of this letter to Wells
21 Fargo's Credit Dispute Resolution Department. See Clement Decl. ¶ 10.

22 This lawsuit was filed on November 20, 2007. On December 22, 2007, Trans Union sent a
23 second CDV to Wells Fargo's Credit Dispute Resolution team. See Clement Decl. ¶ 11. The
24 December 22, 2007 CDV stated that Plaintiff claimed identity theft and it included Dispute Code
25 1:103 for identity theft. See Clement Decl. ¶ 12. In accordance with Wells Fargo's practice, the
26 December 22, 2007 CDV was forwarded to the fraud department for investigation. See Clement
27 Decl. ¶ 13.

28 On December 24, 2007, Wells Fargo advised Trans Union to report on Plaintiff's credit

3

report that the consumer disputed the account.  See Clement Decl. ¶ 14; Ex. G.  On January 11, 2008, Wells Fargo re-instructed Trans Union and the other national agencies to delete the auto account at issue from Plaintiff's credit report.  See Clement Decl. ¶ 14; Ex. H.  This action was taken within thirty days of the date that Trans Union first informed Wells Fargo of the identity theft.  See Clement Decl. ¶ 14.

**Discussion**

Pursuant to 15 U.S.C. § 1681s-2(b), Defendants have certain duties:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

**Negligent failure to comply with § 1681s-2(b)**

The issue of negligent failure to comply with § 1681s-2(b) turns on whether Defendant's investigation upon receipt of information from Trans Union was reasonable under that statute.  See Gorman v. Wolpoff & Abramson, 435 F. Supp. 2d 1004, 1009 (N.D. Cal. 2006); Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005); Johnson v. MBNA America Bank, 357 F.3d 426, 431 (4th Cir. 2004).  The question of reasonableness is generally one for the jury.  See, e.g., Guimond v. TransUnion, 45 F.3d 1329, 1333 (9th Cir. 1995).  Defendants point to two cases in

4

1 which summary judgment was granted on the issue of reasonableness. See Westra, 409 F.3d at 827; 2 Gorman, 435 F. Supp. 2d at 1009.  In those cases, however, the reasonableness of the investigations 3 was beyond question, which distinguishes them somewhat from this case.  See Westra, 409 F.3d at 4 827) (". . . summary judgment is proper if the reasonableness of the defendant's procedures is 5 beyond question.") (citing Crabill v. TransUnion, 259 F.3d 662, 664 (7th Cir. 2001)).

6       Defendants rely heavily on Westra, in which the court affirmed summary judgment under § 7 1681s-2(b), finding that the reasonableness of the investigation was beyond question.  There, as 8 here, the credit reporting agency issued two CDVs to Credit Control, a furnisher of credit 9 information.  While the Westra decision does not quote the exact language of the first CDV, the 10 court there stated that the first CDV "*did not make any reference to fraud* or identity theft nor did it 11 include the documentation [a letter, a fraud statement and information about the perpetrator of the 12 identity theft] that Westra had provided."  Westra, 409 F.3d at 826 (emphasis added).  Credit Control 13 verified the account information as accurate and belonging to the plaintiff.  Id.  The second CDV, 14 issued several months later, indicated that the dispute was whether the account was fraudulent.  Id. 15 Based on the new information concerning fraud, Credit Control promptly ordered deletion of the 16 fraudulent account.  Id.  The court determined that it was beyond question that the investigation was 17 reasonable given the "scant information" received regarding the plaintiff's dispute.

18       While this case is like Westra in many respects, in contrast to Westra, the first CDV sent to 19 Defendants in this case did refer to fraudulent charges made on Plaintiff's account.  Defendants 20 respond that the CDV's first Dispute Code 1:104 was nonsensical because no charges could be made 21 on the account, which was an automobile loan, and that therefore it was reasonable to ignore that 22 part of the CDV.  Defendants argue that it had no obligation to confer with Trans Union about the 23 nature of the dispute code or do anything else to follow up on that issue, even though it mentioned 24 fraud.  Plaintiff did not cite any case in which a furnisher of credit information had an obligation to 25 clarify information on a CDV that appeared nonsensical with a credit reporting agency,[2] but

---

27    [2]  Plaintiff also argued at the hearing that Defendants' failure to take precautions to make 28 certain that in the conversion of its system, the information about Plaintiff's prior lawsuit and its resolution was maintained demonstrates the unreasonableness of the investigation.  Plaintiff is essentially arguing for a records retention policy, but could cite no caselaw requiring such a policy.

5

Defendant also has not established that simply ignoring such information in a CDV is reasonable beyond question. Therefore, although the question is a close one, Plaintiff has at least raised a triable issue of fact as to whether the investigation was reasonable.

These facts also distinguish this case from Gorman, in which the district court granted summary judgment in favor of the furnisher of credit information on the plaintiff's § 1681s-2(b) claim where the record established that the bank conducted an investigation based on the CDV forms received from Trans Union, and the only evidence presented by the plaintiff as to unreasonableness was that: (1) the bank did not resolve the dispute in his favor; and (2) the bank did not contact him with respect to the disputed charges. The district court found that the reasonableness of the investigation is not "an assessment of the outcome," and that a furnisher of credit need not contact a debtor who disputes the debt. See Gorman, 435 F. Supp. 2d at 1009 (citing Westra, 409 F.3d 827). Therefore, the district court held that the plaintiff's evidence was insufficient to raise a genuine issue of material fact as to unreasonableness.

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for negligent failure to comply with 15 U.S.C. § 1681s-2(b) is denied.

**Willful failure to comply with 15 U.S.C. § 1681s-2(b)**

Willful violations of 15 U.S.C. § 1681s-2, which can support an award of punitive damages under § 1681n, require a showing that Defendant knowingly and intentionally acted in violation of FCRA or in reckless disregard of statutory duty. See Safeco Ins. Co. of America v. Burr, 127 S. Ct. 2201, 2208 (2007); see also Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d Cir. 1996) (stating that reinsertion of inaccurate information into credit report was not willful even though the consumer notified the reporting agency of the error and the reporting agency failed to correct it, and that the failure to promptly send a copy of a credit report was not willful). Willfulness under this statute is generally a question of fact. See,e.g., Cushman v. Trans Union, 920 F. Supp. 80 (E.D. Pa. 1996) (finding a triable issue of fact as to willfulness where the plaintiff had provided evidence that she twice informed the reporting agency about errors and the reporting agency failed to investigate); Crane v. Trans Union, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003) (failure to independently

1  investigate dispute showed a triable issue of fact as to willfulness).

2  Here, however, Plaintiff has failed to raise a triable issue of fact as to willfulness. It is
undisputed that, unlike in <u>Cushman</u> and <u>Crane</u>, Defendants performed an investigation in response to
both CDVs that they received. The crux of this case is whether the investigations were sufficient.
Plaintiff has provided no evidence of any knowing or intentional act that violated the Fair Credit
Reporting Act or any reckless disregard for the Fair Credit Reporting Act requirements. Therefore,
Defendants' Motion for Summary Judgment as to Plaintiff's claim of willful violation of 15 U.S.C. §
1681s-2(b) is granted.

**Conclusion**

Defendants' Motion for Summary Judgment is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: December 4, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge